IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT MANNING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:13-CV-2178-D |
| VS. | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER, SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION</u>

Plaintiff Robert Manning ("Manning") brings this action under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits under Title II of the Act. For the reasons that follow, the court vacates the Commissioner's decision and remands this matter for further proceedings.

I

On May 22, 2010 Manning protectively filed a Title II application for a period of disability and disability insurance benefits. In his application, he alleged that he became disabled beginning May 5, 2008. The Commissioner denied Manning's application upon initial determination, and again upon reconsideration, after which Manning requested a hearing.

An administrative law judge ("ALJ") attempted to hold a hearing in November 2011. Manning appeared at the hearing without counsel and requested a continuance. The ALJ

continued the hearing until April 9, 2012, when Manning appeared with counsel. Following the hearing, the ALJ issued an unfavorable decision.

In reaching his decision, the ALJ followed the five-step sequential process prescribed in 20 C.F.R. § 404.1520(a) (2013). At step one,[1] the ALJ determined that Manning had not engaged in substantial gainful activity since his alleged onset date through the date he was last insured (December 31, 2013). At step two, the ALJ found that Manning's diabetes mellitus ("diabetes"), osteoarthritis, bilateral knee degenerative joint disease, degenerative joint disease of the left shoulder, degenerative disc disease of the spine, peripheral neuropathy, and affective disorder were severe impairments. At step three, the ALJ concluded that Manning does not have an impairment or combination of impairments that meets or medically equals any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that Manning has the following residual capacity function ("RFC"):

> the claimant has the [RFC] to lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand and walk for six hours out of an eight hour workday and sit for six hours out of an eight hour workday, limited by occasional climbing ramps and stairs, balancing, stooping, kneeling and crouching, and no climbing ladders, ropes or scaffolds. He is further limited to simple, routine tasks consistent with unskilled work.

R. 20-21. At step four, the ALJ found that Manning could not perform his past work as a heavy forger or as an auto salesman. At step five, based on the vocational expert's ("VE's") testimony, the ALJ found that Manning is capable of performing other jobs existing in

---

[1]Prior to reaching this conclusion, the ALJ found that Manning met the insured status requirements of the Act through December 31, 2013.

significant numbers in the national economy, such as poultry dresser, cleaner, and power screwdriver operator.  Accordingly, the ALJ found that Manning was not under a disability at any time between May 5, 2008, the alleged onset date, and April 26, 2012, the date of the decision.

Manning sought review by the Appeals Council, which denied his request, and the ALJ's decision became the final decision of the Commissioner.  Manning now seeks judicial review based on two grounds, but the court need only address one: his contention that the ALJ erred when, without explanation, he mechanically applied the Medical-Vocational Guidelines ("Guidelines") as a framework for his step-five decision.[2]

II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence.  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam).  "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law."  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

---

[2]Manning also contends that the hypothetical the ALJ presented to the VE was defective because it failed to include Manning's use of a cane.  Because the court is remanding for the Commissioner to consider the borderline age issue, it need not reach Manning's other argument.

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations omitted).  "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173.  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)).  "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted).  Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985).  The resolution of conflicting evidence is for the Commissioner rather than for the court.  *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.

- 4 -

§ 423(d)(1)(A). In determining whether an applicant is disabled, the ALJ follows a five-step sequential analysis. *See, e.g.*, *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the ALJ finds that the claimant is disabled or is not disabled at any step in the analysis, the analysis is terminated. *Id*. Under the five-step sequential inquiry the Commissioner considers whether (1) the claimant is presently engaged in substantial gainful activity, (2) the claimant's impairment is severe, (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R. § 404.1520, Subpart P, Appendix 1, (4) the impairment prevents the claimant from doing past relevant work, and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *See, e.g., Leggett*, 67 F.3d at 563-64 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520(a)(4) (2011). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)). "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's

- 5 -

claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id.* Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced." *Id.* The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

## III

Manning contends that the ALJ erred when, without explanation, he mechanically applied the Guidelines as a framework for his step-five decision.

## A

At the fifth step of the sequential evaluation process prescribed in 20 C.F.R. § 404.1520(a), the ALJ considers the claimant's age as one of the relevant vocational factors. *See* 20 C.F.R. § 404.1563(a). A claimant can be classified in one of three categories: (1) younger person (18-49), (2) a person closely approaching advanced age (50-54), or (3) a person of advanced age (55 or older). *See id.* § 404.1563(c)-(e). Generally, an individual attains a given age on the day before his birthday. *See* 20 C.F.R. § 404.2(c)(4). But there is a regulation governing "borderline situations" that provides, in pertinent part:

> We will use each of the age categories that applies to you during
> the period for which we must determine if you are disabled. We
> will not apply the age categories mechanically in a borderline
> situation. If you are within a few days to a few months of
> reaching an older age category, and using the older age category
> would result in a determination or decision that you are disabled,
> we will consider whether to use the older age category after
> evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b). The classification of a person's age can be important because, in general, the higher the age category, the more lenient the standard for proving a disability. *See* Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8.

The ALJ rendered his decision on April 26, 2012. At that time, Manning was 54 years, 8 months, and 5 days old, which means that, at the time of the ALJ's decision, Manning was less than four months away from automatically qualifying as a person of advanced age. Manning argues that he was in a borderline situation—because his 55th birthday was less than six months away at the time of decision—and that the ALJ erred by not considering whether he should be classified as a person of advanced age rather than as someone closely approaching advanced age. Manning contends that, had he been classified as a person of advanced age, he would have been deemed "disabled" under Guidelines Rule 202.06. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2. The Commissioner responds that the ALJ has significant discretion to determine whether a claimant is in a borderline situation and that Manning has failed to show that the ALJ's decision was an abuse of discretion.

There are two issues presented by Manning's argument: the first is what constitutes a "borderline" age situation; and the second is whether the ALJ must explain in his written

decision whether he considered the claimant's borderline age situation.[3]

## B

The term "borderline" is not specifically defined either by statute or by the governing regulation. *See Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988) (per curiam). Although the regulation refers to a "borderline situation" in the context of "the age categories," it merely provides that the Commissioner will consider applying an older age category if the claimant is "within a few days to a few months of reaching an older age category." *See* 20 C.F.R. § 404.1563(b). SSR 83-10 states that "[n]o fixed guidelines as to when a borderline situation exists are provided since such guidelines would themselves reflect a mechanical approach." SSR 83-10, 1983 WL 31251, at *8.

Courts have reached conflicting results when applying the qualification that a claimant be "within a few days to a few months" of reaching the older age category. *Compare, e.g., Phillips v. Astrue*, 671 F.3d 699, 703 (8th Cir. 2012) (holding that claimant within four months of 55th birthday at time of ALJ's decision was in borderline situation), *with Woods v. Chater*, 1996 WL 570490, at *5 (N.D. Cal. Sept. 27, 1996) (holding that claimant within four months of 55th birthday at time of ALJ's decision was not in borderline situation). In general, courts have declined to announce a bright-line rule for what constitutes

---

[3]There is a third issue that is related to the first two but is not implicated by Manning's appeal. That issue is whether, assuming the ALJ *did* consider the borderline age situation, the ALJ erred by applying the younger age category. Because the court concludes that it is unable to determine whether the ALJ considered the borderline age situation at all, it does not reach the question whether the ALJ erred by applying the younger age category.

"borderline" age. *See, e.g., Phillips*, 671 F.3d at 703 ("We decline to draw a bright line for purposes of this case."). This approach is supported by SSR 83-10. A growing number of courts, however, appear to hold that a claimant within six months of an older age category presents a borderline age situation. *See, e.g., Lewis v. Comm'r of Soc. Sec.*, 666 F.Supp.2d 730, 738 (E.D. Mich. 2009) ("Generally, courts hold that a person within six months of the next higher age category is considered 'borderline.'"); *Gallagher v. Astrue*, 2009 WL 929923, at *6 (D.N.H. Apr. 3, 2009) ("Although the courts have varied in their interpretation of in what period of time the borderline range falls, the general consensus is that the borderline range falls somewhere around six months from the older age category.") (citation and internal quotation marks omitted); *Pickard v. Comm'r of Soc. Sec.*, 224 F.Supp.2d 1161, 1168 (W.D. Tenn. 2002) (adopting magistrate judge recommendation) ("The courts have attempted to [define 'borderline situation'], generally concluding that the borderline range falls somewhere around six months from the older age category.").[4]

---

[4]The Social Security Administration's Hearings, Appeals and Litigation Manual ("HALLEX") includes two relevant interpretations. In Appeals Council Interpretation II-5-302 (effective Mar. 16, 1979), the question presented was "How far in advance of attainment of a specific age category . . . may [the Guidelines] pertinent to that category be applied?" *Russell v. Comm'r of Soc. Sec.*, 20 F.Supp.2d 1133, 1135 (W.D. Mich. 1998). In its interpretation, the Appeals Council stated: "Generally, establishing an onset date up to six months prior to attainment of the specified age would be reasonable." *Id.* More recently, in Appeals Council Interpretation II-5-3-2 (effective Nov. 2, 1993), the question presented was "What is a borderline age situation and what factors should be considered when determining whether to use a higher age than a claimant's chronological age when applying [the Guidelines]?" The interpretation stated:

> To identify borderline age situations when making disability determinations, adjudicators will apply a two-part test: (1)

The Fifth Circuit has not squarely addressed the meaning of "within a few days to a few months." Instead, it has repeatedly held that the Commissioner has significant discretion when determining whether a situation is borderline. *See Stanridge-Salazar v. Massanari*, 254 F.3d 70, 2001 WL 502506, at *1 (5th Cir. Apr. 24, 2001) (per curiam); *Skinner v. Shalala*, 47 F.3d 424, 1995 WL 71092, at *5 (5th Cir. Jan. 25, 1995) (per curiam); *Harrell*, 862 F.2d at 479; *Underwood v. Bowen*, 828 F.2d 1081, 1082 (5th Cir. 1987). As the Fifth Circuit noted in *Harrell*, "[t]he Secretary's interpretation[] of [her] regulations deserves considerable deference in the absence of an obvious inconsistency between the interpretation and the language of the regulation in question." *Harrell*, 862 F.2d at 479.

Manning argues that he was in a borderline situation. He was born on August 21, 1957. The ALJ issued his decision on April 26, 2012, meaning that Manning was less than four months away from the next older age category (a person of advanced age) at the time

------

Determine whether the claimant's age is within a few days or a few months of a higher age category. (2) If so, determine whether using the higher age category would result in a decision of "disabled" instead of "not disabled."

The interpretation explains that, if the answer to one or both questions is "no," a borderline situation does not exist or would not affect the outcome and the adjudicator will use the claimant's chronological age. If the answer to both questions is "yes," a borderline situation exists, and the adjudicator must decide whether it is more appropriate to use the older age category or the claimant's chronological age based on a "sliding scale" approach. Under this approach, the claimant must show progressively more additional vocational adversities to support the use of the older age category as the period between the claimant's actual age and his attainment of the next older age category lengthens. *See id.*; HALLEX II-5-3-2, 2003 WL 25498826.

of the ALJ's decision.[5]  Manning maintains that, based on the emerging consensus among courts that a borderline situation occurs within six months of the next older age category, his case presents a borderline situation.  The Commissioner responds with two arguments: (1) that, under *Harrell* and *Underwood*, the Commissioner has significant discretion to decide whether a claimant is in a borderline situation; and (2) that the *American Heritage Dictionary* defines "few" as "amounting to or consisting of a small number . . . an indefinitely small number of persons or things; not many," and four months is therefore not "a few" months away from the next older age category.

The court holds that, under the circumstances of this case, Manning was in a borderline situation at the time of the ALJ's decision.  *Harrell* and *Underwood* are not to the contrary.  Neither case stands for the proposition that an ALJ has unfettered discretion to place a claimant in an age category, and both cases are factually distinguishable.  In *Harrell* the claimant had just turned 49 by the time of the ALJ's decision and he was therefore nearly one year away from the next older age category—approximately seven months further removed from the next older age category than was Manning.  *See Harrell*, 862 F.2d at 479

---

[5]The Commissioner argues, without citing legal authority, that Manning's age should be considered at the time of the first hearing date rather than at the time of the ALJ's decision.  The court disagrees.  In determining a claimant's age for the purposes of a disability determination, the ALJ must consider either the date last insured, if that date occurs before the date of the decision, or the claimant's age as of the date of the decision, if the date of decision occurs before the last date insured.  *See, e.g., Hurter v. Astrue*, 465 Fed. Appx. 648, 653 (9th Cir. 2012) (per curiam); *Byers v. Astrue*, 506 Fed. Appx. 788, 790 (10th Cir. 2012); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987).  Manning's last date insured occurred after the date of the ALJ's decision, so his age is considered as of the date of the ALJ's decision.

- 11 -

("Harrell was 48 years old at the time of the hearing and had just turned 49 on the date of the Secretary's decision.").  Additionally, had the claimant in *Harrell* been categorized in the next older age category, it would not have changed the ultimate outcome.  *See id.* ("Morever, even if Harrell were in the 50-54 age category, a person with his education, work experience and functional capacity would still not be considered disabled.").  Here, Manning maintains—and the Commissioner does not dispute—that had Manning been evaluated as if in the next older age category, he would have been deemed "disabled" under Guidelines Rule 202.06.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 2.  *Underwood* is distinguishable on similar grounds.  In that case, the claimant was ten months shy of his 55th birthday, and although he did argue that applying the older age category would have changed the outcome in his case, evidence in the record undermined that assertion.  *See Underwood*, 828 F.2d at 1082-83.[6]

The Commissioner's reliance on the definition of "few" in the *American Heritage Dictionary* is also unavailing.  The definition that the Commissioner cites explicitly defines the word as meaning "an *indefinitely* small number of persons or things; not many" (emphasis added).  Applying that definition to the issue presented here does not resolve the question because it does not provide a numerical range for the meaning of the word.

---

[6]Although the Commissioner does not rely on it, *Stanridge-Salazar* is also distinguishable.  In that case the claimant was six months away from the next older age category, and she presented nothing to support her argument that the ALJ erred in applying the younger age category to her.  *See Stanridge-Salazar*, 254 F.3d 70, 2001 WL 502506, at *1.

"Indefinitely small" does not exclude the possibility that "four months" is within "a few months" of the next older age category.  Moreover, the Commissioner neither addresses Manning's argument that courts have converged on the six-month period as presenting a general rule of thumb for defining borderline situations nor explains why the court should apply a definition from *American Heritage Dictionary* rather than the developing case law.

## C

The second issue is whether an ALJ is required to explain in his written decision whether he considered the borderline age situation.

### 1

The circuits are split on this question, and the Fifth Circuit has not decided it.  *See, e.g., Pickett v. Astrue*, 895 F.Supp.2d 720, 725 (E.D. Va. 2012) ("[T]he Circuit Courts are split on whether an ALJ must explicitly acknowledge the borderline age issue and conduct a clear analysis.").  The Sixth, Ninth, and Eleventh Circuits hold that an ALJ is not required to explain in his written decision whether he considered the borderline age situation.  *See Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071-72 & n.4 (9th Cir. 2010); *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399-403 (6th Cir. 2008); *Miller v. Comm'r of Soc. Sec.*, 241 Fed. Appx. 631, 635-36 (11th Cir. 2007) (per curiam).  The rationale for this approach is that, while ALJs are not to apply the age categories mechanically, nothing in the relevant statute or governing regulations requires an ALJ to address the claimant's borderline

age situation in his opinion.  *See, e.g., Bowie*, 539 F.3d at 399 (explaining rationale).[7]  The

Third, Eighth, and Tenth Circuits have taken the opposite view, holding that the ALJ is

required to explain in his written decision whether he considered the borderline age situation.

*See Phillips*, 671 F.3d at 706-07; *Lucas v. Barnhart*, 184 Fed. Appx. 204, 208 (3d Cir. 2006);

*Daniels v. Apfel*, 154 F.3d 1129, 1134-1135 (10th Cir. 1998); *Kane v. Heckler*, 776 F.2d

1130, 1134 (3d Cir. 1985).  The rationale for this approach is that placing the claimant in an

age category is a factual finding that must be supported by substantial evidence, and without

its being mentioned in the ALJ's written decision, a reviewing court cannot meaningfully

analyze the ruling under the substantial evidence standard.  *See, e.g., Daniels*, 154 F.3d at

1136 (explaining rationale); *see also Bowie*, 539 F.3d at 404 (Moore, J., dissenting) (same).

---

[7]A recent interpretation by the Appeals Council supports this view.  It states:

> Absent a showing of additional adversit[ies] justifying [the] use
> of the higher age category, the adjudicator will use the
> claimant's chronological age—even when the time period is
> only a few days.  *The adjudicator need not explain his or her
> use of the claimant's chronological age* . . . .  The Appeals
> Council will ordinarily deny review, assuming there is no other
> basis for granting review, when a borderline age situation exists,
> the ALJ's decision does not address the issue, and the Appeals
> Council does not find sufficient basis in the record for using the
> higher age category.

HALLEX II-5-3-2, 2003 WL 25498826 (emphasis added).

District courts in the Fifth Circuit have generally adopted a middle ground.[8]  They
have rejected a *per se* requirement that the ALJ must *always* explain in his written decision
whether he considered the borderline age issue, but they have held that, in cases where there
is no explanation of the issue and there is an indication that the claimant might be considered
disabled under a different Guidelines rule, a remand is proper.  For example, in *Singleton v.
Astrue*, 2013 WL 460066 (N.D. Tex. Feb. 7, 2013) (Horan, J.), Judge Horan applied the logic
of *Stanbridge-Salazar* and *Harrell*, which recognize the considerable deference of ALJs, and
explained:

> Although Section 404.1563(b) mandates that the issue must be
> "considered" such that the record contains enough of an
> explanation [of] the ALJ's overall disability adjudication to
> enable reviewing courts to determine whether the decision is
> supported by substantial evidence, there is no requirement that
> an ALJ explain in his written decision why he did not use an

---

[8]Some district courts in other circuits have followed the approach taken by the Third,
Eighth, and Tenth Circuits.  *See, e.g., Pickett*, 895 F.Supp.2d at 724 ("A non-mechanical
application of the [Guidelines] requires additional analysis."); *Anderson v. Astrue*, 2011 WL
2416265, at *11 (N.D. Ill. June 13, 2011) ("An examination of the case law in this district
shows that the courts have required ALJs to consider and explain their age category
determinations in borderline age situations."); *Justice v. Astrue*, 589 F.Supp.2d 110, 112 (D.
Mass. 2008) ("In the case at hand, without a record of the hearing officer's reasoning
regarding [the claimant's] potential 'borderline age,' it is impossible for this Court to
determine that the decision was not made 'mechanically' in violation of Section
404.1563(b)."); *Crawford v. Barnhart*, 556 F.Supp.2d 49, 54 (D.D.C. 2008) ("The ALJ
should have recognized this as a borderline situation and made an explicit decision about the
appropriate age category to use, including a consideration of the appropriateness of the older
age category."); *Bush v. Astrue*, 2008 WL 867941, at *7 (S.D. W. Va. Mar. 28, 2008)
("Accordingly, the undersigned finds that the ALJ was required to make a finding regarding
his choice of age category."); *Russell*, 20 F.Supp.2d at 1136 ("Accordingly, the ALJ was
required to make a finding which included consideration of more than just the plaintiff's
chronological age.").

older age category.

*Id.* at *8.  And another district court in this circuit has concluded that

> [w]hile there is no *per se* requirement that an ALJ explain in his
> written decision why he did not use an older age category, §
> 404.1563(b) specifically mandates that the issue be "considered"
> such that the record contains enough of an explanation of the
> ALJ's overall disability adjudication to enable reviewing courts
> to determine whether the decision is supported by substantial
> evidence.

*Stout v. Astrue*, 2012 WL 1020179, at *10 (E.D. La. Feb. 22, 2012) (citing *Bowie*, 539 F.3d

at 400-01), *rec. adopted by* 2012 WL 1020174 (E.D. La. Mar. 26, 2012).  In *Stout* the court

remanded the case because the ALJ did not explain whether he considered the borderline age

issue, and the application of the next older age category could have changed the ultimate

disability determination from "not disabled" to "disabled."  *Id.* at *11-12.

Manning argues that a remand is necessary because the ALJ did not explain in his

written decision his consideration of the borderline age issue, and because the application of

the next older age category would change the outcome in his case under Guidelines Rule

202.06.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 2.  The Commissioner does not dispute

the latter assertion but responds that the circumstances in this case do not warrant a remand

because Manning's written statements and oral testimony undermine his disability claim.

2

The court rejects the conclusion that, in every case in which the claimant presents a

borderline age situation, there is a *per se* requirement that an ALJ explain in his written

decision whether he considered the borderline age issue.  Instead, the court holds that

- 16 -

whether such an explanation is necessary depends on the circumstances of the case. In the circumstances of Manning's case, the court concludes that a remand is necessary because the court is unable to determine from the record whether the ALJ considered the borderline age issue, and, without this explanation, it cannot conclude that the ALJ's decision is supported by substantial evidence.

The ALJ correctly noted in his decision that, at step five of the sequential process, he must determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience. But after explaining his finding at step four, the ALJ stated: "The claimant was born on August 21, 1957 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 [C.F.R. §] 404.1563)." R. 26. At step five, the ALJ found: "Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" R. 27. The ALJ's decision does not mention Manning's age as of the date of the decision (or his age as of the date of the hearing); it only refers to his age as of the date of his alleged onset date, which was four years earlier. There are references to Manning's age in other parts of the decision that are written in the present tense, suggesting that the ALJ might have considered Manning's *current* age as of the date of the hearing or the date of the decision.[9] For example, the ALJ stated: "Based on the testimony of the [VE], the undersigned concludes that, considering the

---

[9]Manning was 54 years old at both times. The hearing occurred on April 9, 2012, and the decision was issued on April 26, 2012.

claimant's age, education, work experience, and [RFC], the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. 27. But these references are not a sufficient basis for the court to conclude that the ALJ in fact recognized that Manning was 54 years old and within four months of his 55th birthday, because the only age the ALJ explicitly acknowledged was Manning's age as of his alleged onset date.[10] In these circumstances, a remand is necessary because Manning aged *into* the borderline age situation during the period between the alleged onset date (when he was 50 years old and more than four years away from the next older age category) and the date of the ALJ's decision (when he was 54 years old and less than four months away from the next older age category). It is impossible to determine from the ALJ's decision whether he realized this fact. *See Lewis v. Colvin*, 2013 WL 1283837, at *5 (E.D. Mo. Mar. 27, 2013) (holding that remand was necessary where ALJ's decision was silent on borderline age issue and only age explicitly discussed was claimant's age as of alleged onset date); *Durkee v. Astrue*, 2012 WL 3150587, at *7 (C.D. Cal. Aug. 2, 2012) (same).

The Commissioner's only remaining argument is that the circumstances of this case do not warrant a remand because Manning's written statements and oral testimony undermine his disability claim. The Commissioner argues that record evidence indicates that Manning

---

[10]Neither is the ALJ's citation to 20 C.F.R. § 404.1563 a sufficient basis to conclude that the ALJ adequately considered the borderline age issue. The ALJ did not cite subsection (b), which is the specific provision that governs borderline age situations, so it is possible that the ALJ's citation of § 404.1563 was merely intended to support his use of the claimant's chronological age in his disability determination. *Compare* 20 C.F.R. § 404.1563(a), *with id.* § 404.1563(b).

- 18 -

stopped working for reasons other than his medical conditions, that Manning maintained a relatively active lifestyle during his alleged disability period, and that Manning failed to obtain necessary treatment for his conditions.  But the Commissioner does not dispute that, had the ALJ considered Manning to be a person of advanced age rather than one of closely approaching advanced age, he would have been deemed "disabled" under Guidelines Rule 202.06.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 2.  Indeed, the ALJ applied Guidelines Rule 202.14,[11] which assumes a claimant with the following characteristics: (1) an RFC limited to light work as a result of severe medically determinable impairments, (2) closely approaching advanced age, (3) education of high school graduate or more, and (4) previous work experience of skilled or semi-skilled but those skills are not transferable.  *See* R. 27; 20 C.F.R. Part 404, Subpart P, Appendix 2.  But if an otherwise identical claimant is classified as one of advanced age rather than closely approaching advanced age, he is deemed disabled under Guidelines Rule 202.06.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 2. Regardless whether the record includes evidence that Manning stopped working for reasons other than his medical conditions, that he maintained a relatively active lifestyle during his alleged disability period, or that he failed to obtain necessary treatment for his conditions, this would not change this result given the ALJ's other findings.  Moreover, the ALJ

---

[11]The ALJ stated: "If the claimant had the [RFC] to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.14." R. 27.  The ALJ then considered whether Manning's additional limitations prevented him from finding jobs in the national economy.  After concluding that they did not, the ALJ concluded: "A finding of 'not disabled' is therefore appropriate under the framework of the above-cited rule."  *Id.*

explicitly found that Manning's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." R. 27. This finding underscores the importance of the age classification in this case and suggests that Manning may have had additional vocational adversities that cut in favor of applying the older age category. *Cf.* HALLEX II-5-3-2, 2003 WL 25498826.

Because the court is unable to determine from the record whether the ALJ considered whether Manning should be classified as a person of advanced age rather than of closely approaching advanced age, and because the application of the age category could change the outcome in this case, the court vacates the Commissioner's decision and remands this matter for further proceedings consistent with this memorandum opinion.

*       *       *

Accordingly, for the reasons explained, the Commissioner's decision is VACATED, and this matter is REMANDED to the Commissioner for further proceedings consistent with this memorandum opinion.

VACATED AND REMANDED.

January 24, 2014.


_____
SIDNEY A. FITZWATER
CHIEF JUDGE

- 20 -